**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| **LAUREN GREENE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 20-cv-11388-DJC** |
| | ) | |
| **STATE OF MASSACHUSETTS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**ORDER**

**CASPER, J.**                                                                 **October 16, 2020**

*Pro se* plaintiff Lauren Greene ("Greene") has filed a civil action against eighteen defendants for matters broadly related to her psychiatric commitment proceedings, mental health treatment, and access to her minor son.  D. 1.  Greene also filed motions for leave to proceed *in forma pauperis*, D. 2, to expedite this action, D. 3, and for appointment of counsel and permission to file electronically, D. 4.  For the reasons stated below, the Court GRANTS the motion for leave proceed *in forma pauperis*, directs Greene to file an amended complaint, and DENIES the remaining motions.

## I.      Motion for Leave to Proceed *in Forma Pauperis*

Upon review of Greene's motion for leave to proceed *in forma pauperis*, D. 2, the Court concludes that she has adequately demonstrated her inability to pay the $400 filing fee without depriving herself of the necessities of life.  Accordingly, the motion, D. 2, is GRANTED.

## II.      Review of the Complaint

Because Greene is proceeding *in forma pauperis*, the Court may conduct a preliminary review of the complaint and dismiss any portion thereof that is malicious, frivolous, fails to state

1

a claim upon which relief may be granted, or seeks damages against a party that is immune from such relief.  See 28 U.S.C. § 1915(e)(2).  Further, the Court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction, see United States v. Univ. of Mass., Worcester, 812 F.3d 35, 44 (1st Cir. 2016), and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3).   In conducting this review, the Court liberally construes the complaint because Greene is proceeding *pro se*.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  In addition, the Court treats all well-pleaded allegations in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

### A.    Greene's Complaint

#### 1.    Factual Allegations

Greene's complaint, D. 1, is single-spaced typed and sixteen pages long.  The pleading is largely a highly detailed narrative of life events beginning in or about 2010 through the filing of her complaint on July 22, 2020.  Greene's chronicle addresses her attempts to receive appropriate medical care, including psychiatric care, interspersed with information concerning other matters such as her encounters with law enforcement and the courts, incarceration, childbirth, termination of her parental rights, housing challenges, employment and travel.

Prominent in the complaint are allegations concerning two occasions in which Greene was involuntarily committed under Mass. Gen. L. c. 123, § 8.  According to Greene, the first involuntary commitment at issue in this action was precipitated by Greene's November 1, 2017 visit to emergency room of MGH because of abdominal pain.  D. 1 at 6.  Greene represents that she was placed on a psychiatric hold and then transferred to Northshore Hospital in Salem.  Id. Greene states that, while she was still a patient at Northshore Hospital, a proceeding to have her involuntarily committed was commenced.  Id.   Greene alleges that the "commitment paperwork

claimed that [she] was delusional because [she] complained that she was sterilized by the State of New Jersey." Id.  She maintains that "[t]he doctors perpetually misstated [her] complaint about the problem to make a profit" from Medicare.  Id.   Greene further claims that, by the time the commitment hearing took place, "there was great incentive to have the hospital bill paid so [she] was court committed under the pretense that [she] was sterilized in New Jersey" even though she had "adamantly objected to, and affirmed that [she] believed no such thing."  Id. at 7.  Greene maintains that her treatment at MGH and Northshore Hospital, "with alliance in the State of New Jersey[,] [was] a money-making scheme allowed by Medicare, and were false claims violations, and because Health and Human Services have no quality of care provisions, they have approved of everything."  Id. at 8-9.

Greene states that she was hospitalized at in the psychiatric unit of Northshore Hospital "for a total of sixty-six days for no reason" under "filthy" and "extremely boring" conditions.  Id. at 7.  Greene represents that, in May 2020, she was informed that the commitment order had been vacated on appeal by a decision in which the court stated, "we can certainly envision a hypothetical set of facts where a patients'[sic] conduct was so outrageous and offensive that it could give rise to being attacked or injured imminently.  The facts in this case do not rise to such a level."  Id. at 9.

According to Greene, the second commitment proceeding at issue in this action was precipitated by her voluntary admission to McLean Hospital on October 15, 2019.  Id. at 10.  She represents that she asked for "(1) a forty-eight hour re-evaluation . . . of what [she] believe[s] is a misdiagnosis of bipolar or schizo-affective disorder and (2) intervention with family member to reunited with [her] five year son."  Id.  Greene alleges that, "instead of helping," Dr. Suzanne Elizabeth Bloore, a psychiatrist at McLean Hospital, "asked to medicate [Greene] with Risperdal

upon [their] first meeting." Id. at 12.  Greene states that Dr. Bloore later petitioned for Greene's commitment, representing to the state court that Greene was manic depressive or schizoaffective and experiencing a manic episode.   Id. at 10.  Greene further represents that Dr. Bloore claimed Greene "was delusional to lack the insight that [she] had both bipolar and schizophrenia." Id. at 11.  Greene counters that, although not "problem free," she "did not have psychiatric symptoms such that would require antipsychotic medication."  Id.  Greene was committed and remained hospitalized at McLean for a total of "seventy-nine excessively debilitating days, then release[ed] . . . at [her] own cost to an undefined plan to live in a homeless shelter in Washington DC upon [her] release." Id. at 13.

### 2.      Legal Claims and Prayer for Relief

Greene states that her "consolidated complaint" asserts (1) a claim under 42 U.S.C. § 1983 challenging the constitutionality of Mass. Gen. L. c. 123, § 8(d); (2) a personal injury claim; and (3) a medical malpractice claim "that is an [e]ffect from what [she] believe[s] is unconstitutional state law." Id. at 2.  She names eighteen defendants, although she does not clearly identify which claim is being asserted against each defendant.  The defendants include the Commonwealth of Massachusetts; Massachusetts Governor Charles Baker; Massachusetts Board of Health; Massachusetts Department of Mental Health; Partners Healthcare; MGH; Northshore Hospital; McLean Hospital, Dr. Zeina Chemali; Dr. Suzanne Bloore; Jessica Ranford; Sean McGuigan; Committee for Public Counsel Services; Middlesex County Sheriff Peter J. Koutoujian;  Janssen Biotech; Pfizer Inc.; Bristol Myers-Squibb; and, Alex Azar, United States Secretary of Health and Human Services.

Greene's prayer for relief includes matters that do not appear to be directly addressed by her three claims.  For example, Greene asks that "the total amount of money that [MGH,

Northshore Hospital], and McLean Hospital received from Medicare compensation in the last seven years [be] turned over to [her] multiplied three times." Id. at 15.  Greene demands that the father of her child "comply with a paternity test and then after be[] asked to pay what he can in child support."  Id.  She asks that the Commonwealth provide "adequate housing for [her] and [her] son, so that [she] can have the opportunity for reunification and place [her] son in better schooling."  Id.  Greene further requests that state court appoint a public defender for people in her position rather than a private attorney and that the appeals process be reorganized.  Greene wants her Second Amendment rights to "be restored in the State of Massachusetts," and she represents that she "would abide by state regulations to become a licensed and safe gun owner."  Id. at 16. She asks that the legalization of cannabis be repealed and that the Commonwealth of Massachusetts advocate on behalf of her for reunification with her son.  See id.

### B.      Discussion

#### 1.       Requirement of a Short and Plain Statement of the Claim

To state a claim upon which relief may be granted, a complaint pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The "fundamental purpose" of this pleading rule "is to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him."  Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015 (quoting Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008)); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (stating that Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957))).  "The statement should be plain because the principal function

of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." Kamdem-Ouaffo v. Huczko, 810 Fed. App'x 82, 84 (3d Cir. 2020) (per curiam) (quoting Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)). The statement should be short because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." Miranda v. United States, 105 Fed. App'x 280, 281 (1st Cir. 2004) (per curiam) (quoting 5 Charles Alan Wright et al., Federal Practice and Procedure § 1281 (2d ed.)); see Doe v. Sizewise Rentals, LLC, C.A. No. 09–03409, 2010 WL 3614200, at *3 (D.N.J. Sept. 8, 2010) (stating that "[n]either the Court nor Defendants should be required to sift through a tome of allegations to piece together [ ] claims" and dismissing complaint with leave to amend).

.       Here, Greene's complaint is neither short nor plain.  The complaint is lengthy, dense, and difficult to follow.  Greene's factual allegations are not set forth in a chronological, thematic, or other cogent manner.  While the complaint is ostensibly divided into three sections to mirror the three claims she is asserting, there appears to be a disconnect between a factual allegation and the legal claim it purportedly supports.  Many of her factual allegations, though part of her narrative, are extraneous to her claims.  To even attempt to understand the claims against them, the defendants would have to comb through detailed and irrelevant factual allegations.  Even after this exercise, the alleged bases of their alleged liability remain unclear.  Further, there are five defendants (Sheriff Koutoujian, Janssen Biotech, Pfizer Inc., Bristol Myers-Squibb and Secretary Azar) whose names appear only in the list of defendants on the first page of the complaint, but there are no factual allegations concerning them.  In short, the complaint does not provide each defendant fair notice of the claim against them.

## 2.      Other Pleading Requirements

The lack of clarity in Greene's complaint is not helped by her failure to follow other Federal Rules of Civil Procedure.  In addition to complying with Rule 8(a), "[e]ach allegation [in a pleading] must be simple, concise, and direct," Fed. R. Civ. P. 8(d)(1), and "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances," Fed. R. Civ. P. 10(b).

Greene's improper joinder of the defendants also contributes to the abstruseness of her complaint.  Under Rule 20 of the Federal Rules of Civil Procedure, multiple defendants may be joined only where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  In another words, a "plaintiff may join multiple defendants in a single action only if [the] plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." 7 Charles Alan Wright et al., Federal Practice and Procedure § 1655 (3d ed.); see UWM Student Ass'n v. Lovell, 888 F.3d 854, 863 (7th Cir. 2018) (stating that "[u]nrelated claims against different defendants belong in different suits") (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007))).

Greene's complaint does not comply with this requirement.  Take, for one example, her claims against Governor Baker and Sean McGuigan.  Greene's only factual allegations against Governor Baker are that she "tried to reach out" to him about Massachusetts hospitals fraudulently billing Medicare for her care, but neither he nor his "legislative aides" followed up on her inquiries. D. 1 at 9.  In her prayer for relief, she asks for damages based on the amount of unjust enrichment

the hospitals received from Medicare.  Id. at 15.   Regarding McGuigan, Greene's factual allegations against him concern solely their alleged sexual encounter while they were patients at McLean Hospital, Greene's resulting pregnancy, and McGuigan's subsequent refusal to acknowledge paternity.  Id. at 5, 8   Greene asks the Court to require McGuigan "comply with a paternity test and then after being asked to pay what he can in child support."  Id. at 15.  It cannot be said that Greene's claim against Governor Baker for alleged inattention to reports of fraudulent medical billing and her claim against McGuigan for failing to acknowledge paternity "arise[e] out of the same transaction or occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(2)(A).  Further, even as alleged, there is no "question of law or fact common to [these] defendants that will arise in the action."  Fed. R. Civ. P. 20(a)(2)(B).

### 3.      Constitutionality of Mass. Gen. L. c. 123, § 8(d)

Even setting aside the lack of a "short and plain statement of the claim," the complaint fails to "show[] that the pleader is entitled to relief" with regard to Greene's claim challenging the constitutionality of civil commitment under Mass. Gen. L. c. 123, § 8.  Under this statute, a state district court may order the civil commitment of psychiatric patient whose release would create a likelihood of serious harm due to their mental illness.  See Mass. Gen. L. c. 123, § 8(a).  "The first order of commitment of a person under this section shall be valid for a period of six months and all subsequent commitments shall be valid for a period of one year . . . ."  Mass. Gen. L. c. 123, § 8(d).  To the extent that Greene appears to be contending that an initial commitment of up to six months is *per se* unconstitutional, under well settled case law, this assertion fails to state a claim upon which relief may be granted.

A state's statutory scheme for the commitment of the persons who are dangerous by reason of mental illness must give appropriate weight to the interest of the state and the rights of the

individual.  On the one hand, a "state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill."  Addington v. Texas, 441 U.S. 418, 426 (1979); see Kansas v. Hendricks, 521 U.S. 346, 363 (1997) (stating that "tak[ing] measures to restrict the freedom of the dangerously mentally ill" is a "legitimate nonpunitive governmental objective" of a state); Jackson v. Indiana, 406 U.S. 715, 736 (1972) (stating that [t]he States have traditionally exercised broad power to commit persons found to be mentally ill").  On the other hand, a person has a liberty interest in avoiding civil commitment, and the state cannot deprive them of this interest without providing due process.  See Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (stating that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection") (quoting Jones v. United States, 463 U.S. 354, 361 (1983))).

The Supreme Court has never held that civil commitment beyond a certain number of days, months, or years is *per se* unconstitutional.  Instead, due process "require[s] that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."  Jackson, 406 U.S. at 738.  Because the purpose of civil commitment "is to treat the individual's mental illness and protect him and society from his potential dangerousness," a civilly committed person is entitled to release when she is no longer mentally ill or is no longer dangerous. Jones, 463 U.S. at 368; see Jackson, 406 U.S. at 731, 738 (holding that "indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment's guarantee of due process," and that, although declining "to attempt to prescribe arbitrary time limits," the accused cannot be detained solely on the basis of incapacitation any longer than "the reasonable period of time necessary to determine whether there is a substantial

probability that he will attain that capacity in the foreseeable future"); Geness v. Cox, 902 F.3d 344, 364 (3d Cir. 2018) (holding that seven years "exceeded the 'reasonable period of time necessary' under Jackson to ascertain whether there was a substantial probability the [former pretrial detainee] would attain competency in the foreseeable future"); cf. United States v. Filippi, 211 F.3d 649, 652 (1st Cir. 2000) (referring to Jackson, and holding that federal statute requiring commitment of all persons found incompetent to stand trial "for such a reasonable time, not to exceed four months" to determine the possibility of rehabilitation was constitutional because it is "flexible and case-oriented in determining the length of incarceration").

Greene claims that "the first level psychiatric commitment of up to six months" provided for by Mass. Gen. L. c. 123, § 8(d) is unconstitutional because it is "forced, excessive confinement, [and] without a practical timely order for assistance against malpractice and harmful treatment." D. 1 at 2. This contention has been rejected, Doe v. Gaughan, 808 F.2d 871, 880 (1st Cir. 1986) (holding that initial six-month and subsequent one-year commitment periods under Mass. Gen. L. c. 123, § 8 are "reasonably related to the purpose of [patients'] confinement and therefore does not violate [their] due process rights under Jackson v. Indiana"), and, even reading her complaint in the light most favorable to her claims, there is no indication that an initial commitment of up to six months fails to "bear some reasonable relation to the purpose for which the individual is committed." Jackson, 406 U.S. at 738. An initial commitment period of up to six months is a reasonable amount of time to allow medical professionals to develop, implement, and evaluate the efficacy of the patient's treatment plan before being required to seek judicial review for further commitment. That evaluation and treatment may take less than six months for some patients does not render a six-month commitment period *per se* unconstitutional, especially where the patient can petition for discharge at any time, the facility is required to review the patient's status at least

once during the first three months of commitment, and a patient who is no longer in need of inpatient care must be discharged or place on interim community leave.  See Mass. Gen. L. c. 123, §§ 4, 9(b).  Indeed, even as alleged, Greene was discharged from both commitments less than three months into the six-month initial commitment periods.  As alleged, this claim fails to state a claim upon which relief may be granted.

### C.     Subject Matter Jurisdiction

Because Greene's constitutional challenge to Mass. Gen. L. c. 123, § 8(d), fails to state a claim upon which relief may be granted, it appears that the Court is without subject matter jurisdiction to adjudicate any of her remaining state law claims.  "Federal courts are of limited jurisdiction," and "[t]hey cannot act in the absence of subject matter jurisdiction." Univ. of Mass., Worcester, 812 F.3d at 44.  They "have a sua sponte duty to confirm the existence of jurisdiction in the face of apparent jurisdictional defects." Id.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Federal district courts have original subject matter jurisdiction over civil actions arising under federal law, see 28 U.S.C. § 1331 ("§ 1331"), and over certain actions in which the parties are of diverse citizenship and the amount in controversy exceeds $75,000, see 28 U.S.C. § 1332 ("§ 1332").  Where a federal district court has "original" subject matter jurisdiction over a claim (by virtue of § 1331 or § 1332), the court may, in appropriate circumstances, exercise supplemental jurisdiction over any other claims in the action that are part of the same "case or controversy" as the claims providing original jurisdiction.  28 U.S.C. § 1367(a).  Even where a federal district court may exercise supplemental jurisdiction over a claim, it may decline to do so in certain circumstances, including when "the claim substantially predominates over the claim or claims over

which the district court has original jurisdiction" or "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).

Here, the Court does not have federal question subject matter jurisdiction under § 1331. As set forth above, Greene's claim under 42 U.S.C. § 1983 challenging the constitutionality of Mass. Gen. L. c. 123, § 8(d), fails to state a claim upon which relief may be granted.  Greene does not appear to identify another claim in the complaint arising under federal law, but the Court will, however, allow Greene to amend her complaint to state a federal claim.

Further, the Court does not appear to have diversity subject matter jurisdiction under § 1332 over the remaining claims, which arise under state law.  "For purposes of diversity, a person is a citizen of the state in which he is domiciled."  Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008).  "A person's domicile is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Id.  (quoting Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1029 (1st Cir. 1988) (internal quotation marks omitted)).  Where a party seeks to invoke the jurisdiction of a federal district court under § 1332, the parties must be of complete diversity of citizenship.  See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).  Complete diversity of citizenship does not exist where any defendant and any plaintiff are citizens of the same state.  See id.

As alleged, there does not appear to be complete diversity between the parties in this action. Greene does not specifically identify her domicile, and her complaint suggests that she has spent time in many different states and even very brief period in the United Kingdom over the past eight years.  She, however, represents that she currently resides in Massachusetts and, as far as the Court can discern from her complaint, she has consistently returned to Massachusetts after spending time in other areas.  The Court therefore infers that Greene's domicile is Massachusetts.  Because one

or more of the defendants are citizens of Massachusetts, there is not complete diversity of citizenship between the plaintiff and the defendants.

In the absence of original subject matter jurisdiction, the Court would decline to exercise supplemental jurisdiction over Greene's state law claims.  The Court will give Greene an opportunity to file an amended complaint setting forth at least one claim over which the Court may exercise original subject matter jurisdiction under § 1331 or § 1332.  In other words, the amended complaint must either (1) set forth a claim arising under federal law; or (2) assert claims only against parties whose state citizenship differs from Greene's state citizenship.

### III.   Motion for Appointment of Counsel and Leave to File Electronically

Although the Court "may request an attorney to represent any person unable to afford counsel," 28 U.S.C. §1915(e)(1), a civil plaintiff lacks a constitutional right to free counsel, see DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).  The appointment of counsel in a non-habeas civil action is only required where a party is indigent and exceptional circumstances exist such that the denial of counsel will result in fundamental unfairness impinging on the party's due process rights.  See DesRosiers, 949 F.2d at 23.  To determine whether appointment of counsel is required, a court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself.  See id. at 24.

At this point, exceptional circumstances requiring the appointment of counsel do not exist.  The Court, therefore, will deny without prejudice the motion for appointment of counsel.  The Court will also deny without prejudice Greene's request to file electronically.  Greene may renew either request only if and after she has filed an amended complaint that complies with the Federal Rules of Civil Procedure and this Order, the Court orders that summonses issue, and the defendants have been served with and responded to the amended complaint.

13

**IV.     Conclusion**

For the foregoing reasons, the Court rules as follows:

1.      The motion for leave to proceed *in forma pauperis*, D. 2., is GRANTED.

2.      The motion for appointment of counsel and permission to file electronically, D. 4, is DENIED without prejudice.

3.      The motion to expedite, D. 3, is DENIED as moot.

4.      If Greene wishes to pursue this action, she must file an amended complaint by November 18, 2020.  Failure to comply with this directive by November 18, 2020 will likely result in dismissal of the action.

The amended complaint will completely replace the original complaint.  Greene, therefore, must include in the amended complaint the factual allegations and legal claims she wishes to be part of the operative complaint.  It must also set forth a short and plain statement of Greene's claims.  Each allegation must be simple, concise, and direct, and the factual allegations and legal claims must be set forth in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  The amended complaint must also comply with restrictions on the joinder of defendants.

**So Ordered.**

/s Denise J. Casper
United States District Judge

14